IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HERBERT FLAHERTY, JR.,    )
    Plaintiff,      )
            )
    vs       )  Civil Action No. 11-440
            )
ALLSTATE PROPERTY AND   )
CASUALTY INSURANCE COMPANY, )
and JOHN DOE,       )
    Defendants.    )

MEMORANDUM  OPINION  AND  ORDER

MITCHELL, Magistrate Judge:

Presently before the Court is a motion to dismiss the amended complaint submitted by

defendant Allstate Property and Casualty Insurance Company ("Allstate Property").  For reasons

discussed below, Allstate Property's motion to dismiss (Document No. 17) will be granted as to

Counts III-VI and denied in all other respects.

The plaintiff, Herbert Flaherty, Jr., has filed an amended complaint, alleging that Allstate

Property breached two contracts of automobile insurance and acted in bad faith under

Pennsylvania and Ohio law in handling his claims for uninsured and underinsured motorist

benefits.  Also named as a defendant is an unidentified "John Doe" individual, who is said to be

liable for negligence.  The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332.[1]

On May 8, 2008, the plaintiff was injured in a single motor vehicle accident involving a

2000 Dodge Neon owned by Christian and Andrea Jaeger.  The 2000 Dodge Neon was insured

---

[1] The plaintiff commenced this action in the Court of Common Pleas of  Allegheny County, PA.  On April 1, 2011, Allstate Property filed a timely notice of removal to this Court, asserting that the Court has diversity jurisdiction over this matter.  As gleaned from the record, the plaintiff is an individual who resides in Pittsburgh, PA; Allstate Property is an insurance company with corporate headquarters in Northbrook, IL; and the amount in controversy exceeds the statutory limit.  Needless to say,  "John Doe's" residence is undisclosed at this juncture.

under an automobile insurance policy issued by Allstate Property in Ohio to Christian and

Andrea Jaeger (Policy No. 926358561 02/10, hereinafter, the "Jaegar Policy"). The plaintiff

makes claims for Uninsured and/or Underinsured Motorist ("UM/UIM") benefits under both the

Jaegar Policy, and another automobile insurance policy issued by Allstate Property in

Pennsylvania to his father, Herbert Flaherty, Sr. (Policy No. 0908437343 12/21, hereinafter, the

"Flaherty Policy").

With respect to the two insurance policies and the accident at issue, the plaintiff alleges

as follows: that at all times material hereto, he resided with his father, Herbert Flaherty, Sr., in

Pittsburgh, PA; that his father had an automobile insurance policy with Allstate Property (the

Flaherty Policy) which provided $200,000 in UM/UIM benefits on two vehicles with stacked

benefits; that on May 8, 2008, at approximately 3:16 a.m., the plaintiff was a passenger in the

Dodge Neon vehicle owned by Christian and Andrea Jaeger which was driven by defendant John

Doe with the permission of Meghan Jaeger; that at that time, defendant Doe was driving at an

unsafe speed, and he negligently crashed the Dodge Neon into a telephone pole on Greentree

Road in Pittsburgh, PA, causing the plaintiff numerous injuries; and that the Dodge Neon was

insured under a policy of automobile insurance with Allstate Property (the Jaeger Policy) which

provided $25,000 or $75,000 in UM/UIM benefits.

The plaintiff contends that as a result of the accident, he suffered numerous injuries,

including a concussion, scalp laceration, rib fractures, hemoperitoneum of the pelvis, right leg

hemorrhage, cerebral contusion, pulmonary contusion, neck pain, mildly displaced nasal bone

fracture, liver laceration and splenic laceration. In addition, the plaintiff insists he incurred a

lack of memory caused by his injuries in the crash, such that he cannot determine the identity of

the "John Doe" driver; that he continues to be plagued by persistent pain and limitations; and that

he will have to continue receiving medical care and attention.

The plaintiff asserts that by oral and written communication, he requested UM/UIM benefits under both of the aforesaid policies, but Allstate Property refused his requests without reason. The plaintiff also avers that Allstate Property has refused to negotiate with him, or offer him any remuneration despite his serious injuries and significant medical bills.

In the amended complaint, the plaintiff asserts causes of action against Allstate Property as follows: as to Policy No. 908437343 12/21 (the "Flaherty Policy"), which was issued in Pennsylvania, the plaintiff claims that Allstate Property is liable for breach of contract (Count I), bad faith under Pennsylvania law (Count II), and bad faith under Ohio law (Count III). With respect to Policy No. 926358561 02/10) (the "Jaeger Policy"), which was issued in Ohio, the plaintiff claims that Allstate Property breached the contract (Count IV) and acted in bad faith under Pennsylvania law (Count V) and Ohio law (Count VI). As to John Doe, the plaintiff claims that he is liable for negligence (Count VII).

Allstate Property has moved to dismiss the amended complaint pursuant to F.R.Civ.P. 12(b)(6). In support of its motion, Allstate Property argues that the breach of contract claims against it in Counts I and IV should be dismissed, as the plaintiff is not entitled to UM or UIM benefits under the terms of the policies at issue. Allstate Property asserts that having failed to set forth a valid breach of contract claim against it, the plaintiff's claims for bad faith in Counts II, III, V and VI fail as a matter of law.

Concerning the negligence claim against John Doe in Count VII, Allstate Property argues that the claim should be dismissed, since suits against fictitious, unidentified defendants are not favored under Pennsylvania law. In the alternative, Allstate Property requests that the negligence claim against John Doe be severed from this case during trial, as it believes his

alleged tortious conduct may be unfairly imputed to it.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950. To be "plausible', a complaint's factual allegations must "permit the court to infer more than the mere possibility of misconduct." Id. That is, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

Before ruling on Allstate Property's motion to dismiss, we note that no choice-of-law determination has been made in this case between Pennsylvania and Ohio law, the jurisdictions which are said to have the greatest interest in this litigation.

A federal district court exercising diversity jurisdiction is to apply the choice of law rules of the forum state to determine which state's substantive law will apply. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007). Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). Indeed, in Kruvitz, our Court of Appeals stated that "Pennsylvania courts will only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests." Id. at 56.

Both the Flaherty Policy and Jaegar Policy contain a provision titled "What Law Will Apply". In the Flaherty Policy, the "What Law Will Apply" provision is set forth in pertinent

part as follows:

> This policy is issued in accordance with the laws of Pennsylvania
> and covers property or risks principally located in Pennsylvania.
> Subject to the following paragraph [which is inapplicable here, as
> it pertains only if a covered auto accident, or other occurrence for
> which coverage applies happens outside Pennsylvania], any and all
> claims or disputes in any way related to this policy shall be governed
> by the laws of Pennsylvania.

(Flaherty Policy at Auto Amendatory Endorsement -- AU10781-1, p. 1.).[2]

The plaintiff does not dispute that Pennsylvania law applies to the Flaherty Policy. He also does not claim that the Flaherty Policy is ambiguous. Under Pennsylvania law, when "the language of an insurance contract is clear and unambiguous, a court is required to enforce that language." J.C.Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004).

Motion to dismiss breach of contract claim in Count I:

In Count I of the amended complaint, the plaintiff contends that Allstate Property breached the Flaherty Policy by refusing to offer any amount of UM/UIM benefits to compensate him for his loss. In moving to dismiss this claim, Allstate Property argues that the plaintiff has failed to plead facts to establish his entitlement to UM/UIM benefits under the terms of the Flaherty Policy.

As to Uninsured Motorist (UM) coverage, the Flaherty Policy provides in pertinent part:

> … we will pay damages to an insured person for bodily injury
> which an insured person is legally entitled to recover from the
> owner or operator of an **uninsured auto**.

(Flaherty Policy at Part 3, p. 11.) (Emphasis added.)

An **uninsured auto** is defined in the Flaherty Policy as:

1. A motor vehicle which has no bodily injury liability bond
   or insurance policy in effect at the time of the accident.

---

[2] The Flaherty Policy is attached as Exhibit A to the Amended Complaint.

2.  A motor vehicle for which the insurer denies coverage,
    becomes insolvent, or is involved in insolvency proceedings.

3.  A hit-and-run motor vehicle which causes bodily injury to
    an insured person as the result of a motor vehicle accident…

(Flaherty Policy at Part 3, p. 12.)

Allstate Property argues that the plaintiff has not pled facts to establish that he is entitled

to UM benefits under the Flaherty Policy.  According to Allstate Property, that is because

conditions 1 and 2 above (which define an uninsured auto) are inapplicable here, as the plaintiff

contends that the Jaeger Policy provides liability coverage to the Dodge Neon involved in the

accident (Amended Complaint at ¶ 6), and he has not alleged that liability coverage was denied

on the vehicle.  Allstate Property also asserts that condition 3 is inapplicable here, as the plaintiff

does not allege that a hit-and-run motor vehicle was involved in the accident (Id. at ¶¶ 8-9).

We agree that the averments in the amended complaint do not establish the plaintiff's

entitlement to UM benefits under the Flaherty Policy.[3]

Concerning Underinsured (UIM) Coverage, the Flaherty Policy provides in relevant part:

… we will pay damages to an insured person for bodily injury
which an insured person is legally entitled to recover from the
owner or operator of an underinsured auto…

(Flaherty Policy at Part 3, p. 15.)

---

[3] In opposing the motion to dismiss the breach of contract claim in Count I, the plaintiff cites to a Pennsylvania statute, 75 Pa.C.S.A. § 1733(a), which pertains to the priority of recovery where multiple insurance policies apply. With respect to 75 Pa.C.S.A. § 1733(a), the Pennsylvania Supreme Court has stated: "While Section 1733 contemplates that UM and UIM coverage may be portable in some instances, it does not suggest that UM or UIM coverage would extend where the coverage has been specifically excluded".  Burstein v. Prudential Property and Cas. Insur. Co., 809 A.2d 204, 209 n.7 (Pa. 2002).  Also see, Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1194 (Pa. 2008) (where Saylor, J., concurring and dissenting, stated as to 75 Pa.C.S.A. § 1733: "the statute on its face is subordinate to contractual provisions defining the extent of coverage in the first instance.", citing Burstein, supra, 809 A.2d at 209 n.7).  Furthermore, as discussed below, the plaintiff is not entitled to UM/UIM benefits under the Jaeger Policy; thus, Pennsylvania's priority of recovery statute is not applicable here.  The plaintiff also cites Ector v. Motorists Ins. Companies, 571 A.2d 457 (Pa.Super. 1990) to support his claim.  However, in Jeffrey v. Erie Ins. Exchange, 621 A.2d 635, 641 (Pa.Super. 1993), an en banc panel of the Pennsylvania Superior Court limited Ector's scope, finding that the principle of "maximum feasible restoration" no longer exists in Pennsylvania law. Accord, Nationwide Mut. Ins. Co. v. Cummings, 652 A.2d 1338, 1343-44 (Pa.Super 1994).

An **underinsured auto** is defined in the Flaherty Policy as:

> A motor vehicle which has bodily injury liability protection
> in effect at the time of the accident, but its limit for bodily
> injury liability is less than the damages the insured person is
> legally entitled to recover.

(Flaherty Policy at Part 3, p. 16).

Allstate Property avers that the plaintiff has not established his entitlement to UIM benefits under the Flaherty Policy, as he has not alleged that his damages exceed the bodily injury protection in effect at the time of the accident, nor that his damages are in excess of any liability insurance which he might be legally entitled to recover against John Doe.[4] At this juncture, prior to discovery, a determination of the plaintiff's damages cannot be ascertained.

In his prayer for relief, the plaintiff has sought damages in an amount exceeding $75,000. He also alleges in the amended complaint that as a result of the accident, he will be plagued by persistent pain and limitations; that his injuries may be permanent, causing residual problems for the remainder of his lifetime; and that he will be obligated to continue receiving and undergoing medical care and attention and incur medical expenses and costs for an indefinite time (Amended Complaint at ¶¶ 15-16). Thus, to the extent that the plaintiff's damages may exceed the bodily injury protection in effect at the time of the accident, we find that he has stated a "plausible" claim for UIM benefits under the Flaherty Policy. Hence, the motion to dismiss the breach of contract claim in Count I will be denied.

 Motion to dismiss bad faith claims in Counts II and III:

In Count II, which is brought under Pennsylvania law, and in Count III, which is brought under Ohio Law, the plaintiff asserts that Allstate Property engaged in bad faith in denying his

---

[4] Under the Jaeger Policy, the limits of bodily injury liability protection are $25,000 each person and $50,000 each occurrence.   As for the Flaherty Policy, the limits of bodily injury liability protection are $100,000 each person and $300,000 each occurrence.

requests for UM/UIM benefits under the Flaherty Policy without reason.  We will dismiss the bad faith claim in Count III, which is brought under Ohio law, since the Flaherty Policy is governed by Pennsylvania law.

However, the bad faith claim in Count II, asserted under Pennsylvania law, will survive the motion to dismiss.  With respect to his bad faith claim in Count II, the plaintiff contends that Allstate Property's refusal to offer him any money for his loss, despite his extensive injuries and medical bills, constitutes bad faith within the meaning of 42 Pa.C.S.A. § 8371.

It is provided in 42 Pa.C.S.A. § 8371:

In an action arising under an insurance policy, if the
court finds that the insurer has acted in bad faith toward
the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim
from the date the claim was made by the insured in an
amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess costs and attorney fees against the insurer.

To prevail on a bad faith claim under § 8371, a plaintiff must show, with clear and convincing evidence, (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis.  Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Terletsky v. Prudential Property & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. 1994), alloc. denied, 659 A.2d 560 (Pa. 1995).   The term "bad faith" under the statute clearly includes an insurer's "frivolous or unfounded refusal to pay proceeds of a policy".  Polselli v. Nationwide Mut. Fire Ins., 23 F.3d 747, 751 (3d Cir. 1994).

Based on the plaintiff's allegations, Allstate Property's motion to dismiss Count II will be denied, but its motion to dismiss Count III will be granted.

<u>Motion to dismiss breach of contract claim in Count IV:</u>

In Count IV, Allstate Property is said to have breached the Jaeger Policy by refusing to offer the plaintiff any compensation for his loss. While the plaintiff claims he is entitled to UM and/or UIM benefits under the Jaeger Policy, Allstate Property moves to dismiss this claim on grounds that the plaintiff does not qualify for UM or UIM benefits under the policy.

The Jaeger Policy contains a "What Law Will Apply" provision as follows:

> The policy is issued in accordance with the laws of Ohio and covers property or risks principally located in Ohio. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Ohio.
>
> If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under the policy happens outside Ohio, claims or disputes regarding that covered loss to the **auto,** covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

(Jaeger Policy at p. 6 of General Provisions.) (Emphasis in original).[5]

Under the above choice of law provision, Ohio law will govern all claims related to the Jaeger Policy unless, in the absence of the choice of law provision, Pennsylvania law would apply to the dispute. Pennsylvania applies a flexible "contacts/interest" methodology to choice of law questions. <u>Hammersmith</u>, <u>supra</u>, 480 F.3d at 231.

In utilizing this approach to cases involving insurance contracts, courts "apply the law of the state having the most significant contacts or relationships with the contract and not the underlying tort." <u>Nationwide Mutual Ins. Co. v. West</u>, 807 A.2d 916, 921 (Pa.Super. 2002). Thus, "it is contacts as they relate to the insurance policy and not the automobile collision." <u>Id.</u>

---

[5] The Jaeger Policy is attached as Exhibit B to the Amended Complaint.

With respect to the Jaeger Policy, it appears that the state of Ohio has the most significant contacts with it.  That is because the Jaeger Policy was executed and delivered in Ohio; it was issued to Christian and Andrea Jaeger, who were domiciled in Ohio; and there is no indication that the 2000 Dodge Neon covered under the policy was registered anywhere but in Ohio.  Thus, Ohio has the most substantial contacts with the Jaeger Policy, and under the choice of law provision in the contract, Ohio law should govern the contract dispute.

Under Ohio law, the terms of an insurance contract are to be given their plain and ordinary meaning.  <u>Lager v. Miller-Gonzalez</u>, 896 N.E.2d 666, 669 (Ohio 2008).  If the language in a contract is clear and unambiguous, a court will give effect to it, because "a court cannot create ambiguity in a contract where there is none."  <u>Id.</u>  The plaintiff does not claim that the Jaeger Policy is ambiguous.

With respect to Uninsured Motorist (UM) coverage, the Jaeger Policy provides:

> If a premium is shown on the Policy Declarations for Uninsured Motorists Insurance, we will pay those damages which an insured person or an additional insured person:
>
> 1.  is legally entitled to recover from the owner or operator of an uninsured auto, or
>
> 2.  would be legally entitled to recover from the owner or operator of an uninsured auto but for the availability of a defense based on statutory or common law immunity because of bodily injury sustained by an insured person or an additional insured person.
>
> **The bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto…**

(Jaeger Policy at Part 3, p. 12.) (Emphasis added.)

In relevant part, the Jaeger Policy defines what is <u>not</u> an uninsured auto as follows:

**An Uninsured Auto Is Not:**

2.  a motor vehicle which is insured under the Automobile Liability

Insurance of this policy.

(Jaeger Policy at Part 3, p. 13.)

Allstate Property avers that the Dodge Neon vehicle which the plaintiff alleges he was occupying at the time of the accident is listed as an insured vehicle in the Amended Auto Policy Declarations portion of the Jaeger Policy. See, Jaeger Policy at p. 3. Thus, it argues that by policy definition, the Jaeger vehicle cannot constitute an "uninsured auto", as it is a "motor vehicle which is insured under the Automobile Liability Insurance of th[e] policy." We agree.

The above policy language that exempts a motor vehicle that is insured under the liability policy from being an uninsured auto has been upheld by Ohio courts. See, O'Connor-Junke v. Estate of Junke, 2008 WL 4885046 (Ohio App. 8 Dist., Nov. 13, 2008); Calhoun v. Harner, 2008 WL 697109 (Ohio App. 3 Dist., Mar. 17, 2008); also see, Milburn v. Allstate Ins. Co. Property & Cas., 925 N.E.2d 1018 (Ohio App. 10 Dist. 2009) (finding such policy language unambiguous).

Still, in opposing the motion to dismiss Count IV, the plaintiff insists he is entitled to recover UM benefits under Ohio's Revised Code § 3937.18(B), which provides in pertinent part:

> (B) For purposes of any uninsured motorist coverage included in a policy of insurance, an "uninsured motorist" is the owner or operator of a motor vehicle if any of the following conditions applies:
> ………
> (2) The liability insurer denies coverage to the owner or operator, or is or becomes the subject of insolvency proceedings in any state.
>
> (3) The identity of the owner or operator cannot be determined, but independent corroborative evidence exists to prove that the bodily injury… of the insured was proximately caused by the negligence or intentional actions of the unidentified operator of the motor vehicle. For purposes of division (B)(3) of this section, the testimony of any insured seeking recovery from the insurer shall not constitute independent corroborative evidence, unless the testimony is supported by additional evidence.

Allstate Property argues that the above-cited statute, Ohio's R.C. § 3937.18, is not

applicable here, as the clear language in the Jaeger Policy defining what an "uninsured auto is

not" controls the dispute.  Indeed, in <u>O'Connor-Junke</u>, <u>supra</u>, the Court held that the same policy

language at issue here -- defining what "an uninsured auto is not", i.e., "a motor vehicle which is

insured under the Automobile Liability Insurance of this policy", does not contravene Ohio's

R.C. § 3937.18, as the statute permits policies to preclude UM coverage under circumstances that

are not specified in the statute.  <u>O'Connor-Junke</u>, 2008 WL 4885046, at *2 -*5, citing <u>Snyder v.

Am. Family Ins. Co.</u>, 871 N.E.2d 574 (Ohio 2007).  Accord, <u>Calhoun</u>, 2008 WL 697109 at *3.

As explained in <u>O'Connor-Junke</u>, "based on the plain language of R.C. 3937.18, we conclude

that there is nothing in the statute that prohibits the type of definition at issue in this case."  2008

WL 4885046, at *4.

In a similar vein, Allstate Property asserts that the plaintiff is not entitled to UIM benefits

under the Jaeger Policy, because by policy definition, a vehicle insured for coverage under the

Jaeger Policy -- as the 2000 Dodge Neon is -- cannot be deemed "an underinsured auto".  Under

the Jaeger Policy, an **uninsured auto** is further defined as:

> 5. an **underinsured** motor vehicle which has liability protection
> in effect and applicable at the time of the accident in an amount
> equal to or greater than the amounts specified for bodily injury
> liability by the financial responsibility laws of Ohio, but less
> than the limits of liability for Uninsured Motorists Insurance
> shown on the Policy Declarations.

(Jaeger Policy at Part 3, pp. 12-13.) (Emphasis added.)

Allstate Property avers that while the Jaeger Policy provides "underinsured" motorist

coverage in extremely limited circumstances, when those circumstances apply, there is then an

"uninsured auto".  Since, as discussed above, the Jaeger Policy provides that a vehicle insured

under the policy cannot also be deemed "an uninsured auto", it does not qualify for underinsured

coverage under the policy's UIM provision.

12

We agree that pursuant to the clear and unambiguous terms of the Jaeger Policy, the plaintiff does not qualify for UM or UIM benefits. As such, Count IV will be dismissed.

Motion to dismiss bad faith claims in Counts V and VI:

In Count V, which is brought under Pennsylvania law, and in Count VI, which is brought under Ohio law, the plaintiff contends that Allstate Property is liable for bad faith under the Jaeger Policy, as its refusal to offer him any money to compensate him for his injuries and medical costs constitutes a reckless indifference to his rights. We will dismiss the bad faith claim in Count V, which is brought under Pennsylvania law, because the Jaeger Policy is governed by Ohio law.

Likewise, the bad faith claim in Count VI, asserted under Ohio law, will be dismissed. Under Ohio law, "an insurer must 'act in good faith in the processing and payment of the claims of its insured.'" LoCoCo v. Medical Sav. Ins. Co., 530 F.3d 442, 450 (6th Cir. 2008), quoting Staff Builders, Inc. v. Armstrong, 525 N.E.2d 783, 788 (Ohio 1988). "In determining whether an insurer acted with the requisite good faith, a reviewing court must examine whether the insurer 'had a reasonable justification' for taking the challenged action." LoCoCo, supra, 530 F.3d at 450-51, quoting Zoppo v. Homestead Ins. Co., 644 N.E.2d 397, 399-400 (Ohio 1994). Where an insurer's denial of coverage is reasonably justified, it is not done in bad faith. LoCoCo, 530 F.3d at 451. Also see, Bob Schmitt Homes, Inc. v. Cincinnati Ins.Co., 2000 WL 218379 (Ohio App. 8 Dist., Feb. 24, 2000) (under Ohio law, where an insured fails to show it is entitled to coverage under the underlying insurance policy, it cannot prevail on a bad faith claim). For reasons discussed above, Allstate Property had "a reasonable justification" for believing that the plaintiff was not entitled to UM/UIM coverage under terms of the Jaeger Policy. Hence, we will dismiss the bad faith claim in Count VI.

Motion to dismiss negligence claim against John Doe in Count VII or sever it:

Allstate Property argues that the negligence claim against John Doe should be dismissed on grounds that suits against fictitious, unidentified defendants are not favored in Pennsylvania. At this juncture, the claim against "John Doe" should survive the motion to dismiss.

Clearly, "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Blakeslee v. Clinton County, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (citations omitted); accord, Barr v. County of Clarion, 2010 WL 678512, *10 (W.D.Pa. Feb. 23, 2010). Under Pennsylvania law, even in cases where the statute of limitations has expired, a party may amend its pleading to correct the name of a John Doe party who was properly sued; however, such an amendment will be prohibited if its effect is to add a new party. Anderson Equipment Co. v. Huchber, 690 A.2d 1239, 1241 (Pa.Super. 1997) (citations omitted).

Here, the plaintiff brings a negligence claim against the unidentified driver of the Jaeger vehicle who purportedly caused his injuries. Claiming that he cannot identify the driver due to his lack of memory caused by the accident, the plaintiff pursued his claim against "John Doe", hoping to properly identify the driver during discovery. We believe the plaintiff should be permitted to maintain his claim against John Doe, unless discovery fails to reveal his identity.

In the alternative, Allstate Property requests that the Court sever the plaintiff's negligence claim from the claims against it at trial, as it believes John Doe's alleged tortious conduct may be unfairly imputed to it. We will defer ruling on Allstate Property's request to sever the claim against John Doe from the claims against it. If necessary, we will revisit the issue prior to trial.

An appropriate Order will be entered.

<u>O R D E R</u>

AND NOW, this 19th day of October, 2011, for the reasons set forth in the Court's

Memorandum Opinion filed this date,

IT IS ORDERED that the motion to dismiss the amended complaint filed by defendant

Allstate Property (Document No. 17) is granted as to Counts III-VI and denied in all other

respects.


s/ <u>ROBERT C. MITCHELL</u>
United States Magistrate Judge